to go to U.S. v. Antonius. Have you all sort of, are we proceeding as originally contemplated or is there going to be a... No, your honor. I'll just hand it to you, Clark, an outline we have. Ms. Shallow is going to speak for the first six minutes on the due process argument followed by Ms. Liebesman for three minutes on the article one argument. I'll handle two rebuttal on the due process argument followed by Ms. Liebesman on the one minute on point two. And that brings us to the 12 minutes. Okay. I want to make sure... And I gave a outline to you, Clark. I want to make sure the court officer or courtroom deputy, we already got that and is satisfied before we jump in. So if I'm right, that means you're not actually starting. No, I just got it. We're standing here when you asked a question yesterday. We'll start with Attorney Shallow then. And is the courtroom deputy on board with that plan? You got it down? Yes, I just need to know if Shallow has started. That's correct. Good morning, your honors. My name is Jill Shallow. I represent Steve Antonius and I represented him in the district court. And may it please the court. This case raises the question left open in United States v. Vandrand and United States v. Alarcon, which is what due process is required in order to prosecute in the United States someone not on our territory, someone who has taken no advantage of any instrumentality of the United States and whose only conduct is limited to a conspiracy to move a controlled substance from one country outside the United States to another country outside the United States on a stateless vessel. Can you talk a little bit about how it is that that was left open in your view by our decision in Alarcon? Alarcon, I'll start with. In Alarcon, you explicitly said due process requires a sufficient nexus with the United States for those not on board a stateless vessel to be prosecuted under the medley. On the facts of Alarcon, this court concluded that the prosecution satisfied due process. Alarcon had many U.S. contacts that would certainly satisfy due process and nexus. Didn't we say though, even if we assume that the land-based conspirators who aren't physically on board a stateless vehicle can raise a nexus challenge, it doesn't help them here because the U.S. interest in addressing drug trafficking through stateless vessels was a sufficient nexus? You had, Your Honors, already cabined, as it were, Alarcon to these particular defendants. There are several references in the opinion in this instance, for example. I suppose the next question is, why shouldn't we say it's the same thing in this case as there? In other words, how are their due process rights affected by whether they had some random connection to the United States? If the point is that the United States can, consistent with international law and the Constitution, prosecute people who are on a stateless vessel, why can't the United States prosecute their co-conspirators just as they would if it were, for example, an American flag vessel? Because, Your Honor, those who are not on the vessel, that is the statute clearly addresses those on the vessel. It's got to be, I submit, some limiting principle. But why? Why as a matter of due process? Suppose that the people on the stateless vessel got to some place in the Atlantic and transferred the property to a United States flag vessel and then the Coast Guard stops the vessel. How on earth is the situation with respect to the people back in Guyana or back in Jamaica or back in Columbia changed by the fact that the people on the boat are subject to American jurisdiction for one reason rather than for another reason? Because, Your Honor, in your hypothetical, when the narcotics were transferred to a U.S. flagship vessel of some kind, there is a clearly delineated nexus. Why? Not with respect to the people who are back home in South America. They may not even know that the captain of the boats made different arrangements. I'm sorry if I misunderstood your question. The people who are back home, regardless of whatever happened on the boat, need to have some, there needs to be some limiting purpose. But we've long since passed that, haven't we? If the people who are actually doing something with the physical drugs at this point are on an American flag vessel, or if they change their minds and bring it to the United States, then haven't we already said that co-conspirators back home are subject to prosecution because some of the acts take place pursuant to the conspiracy on a vessel or in a territory where the United States has jurisdiction, whether they expected that to happen or not? The, where that happens, there is no question about whether, whether there's a due process limit. There's, because there, let me, let me ask a slightly different question. One of the things that was said in that opinion, my problem with that is that that is an expectation doesn't round very true because, you know, you might have one year in Holland where there's a 10 year minimum here. So in terms of expectations, I think Allerton seems to say, so long as the people on the ship are subject, the people at home are just as subject, they expect regardless. Your Honor, you've raised exactly the point, which is their expectations in terms of arbitrary and fair application of the medley. The person who is on, who is on land. But why shouldn't we, just talking sensibly, if the little guys who are on the ship are going to be liable to American law when they're in a stateless ship, why shouldn't the guys who paid for it be equally liable and equally expect that? Your Honor, somewhere, somehow, there has to be a delineation, I think, there has to be a delineation of what, what the expectation. The people on the ship have an expectation, presumably, that they can be prosecuted anywhere in the world they are on the high seas. The people who are in Guyana or Jamaica certainly can expect that they would be prosecuted there. That is for sure. Why aren't they expecting that they could be prosecuted anywhere where anybody on a stateless ship is prosecuted? The limit is the statelessness ship. That's the limit. And conspiring with folks who are on a stateless ship. The statelessness of the ship doesn't, in my opinion, totally answer the question. The statelessness of the ship only goes so far. Why? Because people who are not in the, we, going back to you, Seth, we say people, when we apply our laws extraterritorially, you know the word. Extraterritorially. That's the word. When we apply our law outside the United States, there has to be a due process analysis and there's got to be some nexus. The guys on the stateless ship can be prosecuted consistent with international law, with congressional intent and with the constitution. When the people back on shore who had paid for the drugs to be located, paid to hire the boat, stand on the shore and wave goodbye saying good luck with your stateless ship going to Ireland. Why have they not subjected themselves to whatever those people on the stateless ship are subject to? All those people have the same thing. Probably none of them have a conscious knowledge that the statelessness of the ship is making a dramatic difference. If it was flying the Colombian flag or the Liberian flag, things would be entirely different. They may or may not know that. But that applies to the people on the boat as well as the people off the boat. Your Honor, when the premise of the prosecution is that the people who wave are as liable as the people who are on the boat, for actions that are taking place entirely outside the United States, no contact whatsoever, that is, no currency, no visas, no nothing, under those circumstances- But how does that distinguish them from the people on the boat? They don't have any contacts with the United States either. They know they're not going to the United States with the drugs. They aren't getting dollars in payment. They don't have bank accounts in Miami. Their only connection is that they are on board a stateless ship and it could have been the United States or it could have been the Spanish Navy or the Liberian Navy that picks them up somewhere. By being on the stateless ship, that's the risk they run. And by sending off the stateless ship, you don't run the same risk. By sending off the stateless ship, you need to have- That's what you say. But isn't the error in terms of due process, if it is one, when we said that there's liability for people on a stateless ship? You know, listening to you, I think there is a strong argument for saying we are reaching to people who have no expectation and therefore due process should not reach them, but that's been settled. Your Honor, that has been settled. But Alarcon specifically left a little strip that it didn't address. And that's the case I'm arguing here. Thank you. I think that has been helpful and we'll have an opportunity to address this argument again in rebuttal.  Thank you, Your Honor. If I'm right, Ms. Liebesman is going to talk about the Article I issue. Good morning, Your Honors. May it please the Court, my name is Ruth Liebesman and I represent Shervington-Lovell. I wanted to make a couple of very quick notes. First is that we are aware that the First Circuit has withdrawn its opinion into Villa-Reyes, which means there is no, they have just recently had a re-hearing on Bonk. So there is no case law to support the concept that Congress exceeded its authority in expanding the definition of stateless vessel. The government has said... Excuse me, what about this case relies on an expanded notion of stateless vessel? I thought that the expanded notion was in one particular subsection, which is not the one that the government relies on here. Am I wrong about that? Yes, Your Honor. The government talks about the Necessary and Proper Clause. The Necessary and Proper Clause gives Congress the authority to enact laws in support of a constitutional statute. Oh, I understand that. But what I thought the idea was that in subsection C of 70502 parens de parens I, the Congress had gone beyond what the international law classic definition of a stateless vessel was. Yes. This prosecution does not rely on subsection C. It relies on subsection B, right? Yes, Your Honor. My point is that we did mention to Villa-Reyes in our brief. Yes. And so I want the court to know we no longer rely upon it. Okay, so what are you relying on? What I'm relying upon, Your Honor, is that there's ample case law that says that the notion of international crime does not include illicit drug trafficking. And for that, yes, it is universally accepted as criminal behavior and as abhorrent, but it does not get universal jurisdiction. There is an expansion of what was allowed. And I note, Your Honor, that in BOSIAC they quoted the law of international criminal law by Antonio Cassisi that the broad range of crimes for illicit trafficking in narcotics drugs is only provided for in international treaties or resolutions of international organizations. And, Your Honor, such a treaty was passed two years after the conduct in this case. But this is not – but this, it seems to me, is not that. This is not an effort to say that there is universal jurisdiction over drug trafficking. It is about there being universal jurisdiction over what happens on the high seas in stateless ships. That's only part of it, Your Honor. Why is that only part of it? That's what the government relies on. That's what Congress relied on in passing this statute. Right, but it also expanded the definition of what is allowed to be prosecuted under a U.S. law. But only in one way, right? Only by – at least as far as any court has ever said, and that's now been withdrawn, as you point out, with respect to subsection C, capital C. Well, Your Honor, there are several courts that have held that this statute is an unconstitutional expansion of the define and punish clause because you're punishing offenses committed by foreigners on foreign vessels on the high seas. Yes, exactly. On foreign vessels is one story. That goes back all the way to the early 19th century where there were, like, murders that took place on French ships. That's a different story than stateless ships, right? Well, Your Honor, this added stateless ships to the definition of what could be covered under maritime jurisdiction. I'm sorry? Do you have any authority? I'm sorry, Your Honor. Do you have any authority that the punish clause cannot apply to stateless ships, regardless of whether what is there is something that is internationally recognized as a crime? No, Your Honor, not specifically. I have, however, relied upon the fact that you cannot use such things as necessary and proper if the underlying statute is unconstitutional, and the entire underlying statute is unconstitutional. I apologize. I just lost you there. I want the court to be aware, though, that if this, first of all, the negotiation of this vessel was done by the DEA, so they planned on a stateless vessel, but is it part of our country's history that we spend U.S. taxpayer dollars to send the DEA to a foreign country to set up drug deals between two other foreign countries? I mean, we do have U.S. v. Lopez Vargas, which says you can't use 846 or 941 to move drugs between Venezuela and Paris for distribution in Europe, because it doesn't matter. That is the statute that you would use generally to obtain jurisdiction over a drug deal if it was committed in the United States, because you need a district or venue in which these actions occurred. Can I ask, are you, I'm trying to figure out, because we said now, again, that you can't use the necessary and proper clause to reach the folks on the ground who are conspiring with the folks in the stateless vehicles, vessels. No. Are you asking us to overrule that, or is there some? No. Your Honor, what I'm saying is that you can't use 846. You can't use a general criminal statute to go after them in a foreign country because those statutes require jurisdiction. But I'm sorry. They did use 846. I'm sorry. In 846, they used this specific statute, which relates to stateless vessels. Right, but it was, it's a general rule. And as a general rule, you can't subject, you can't expand the definition of what is maritime jurisdiction, regardless of what kind of vessel it's on, you're expanding what is a maritime jurisdiction. How are we expanding the definition? Again, you come back to the problem that there may be wrong to talk about jurisdiction over stateless vessels. But that's a longstanding thing. And once we have that, I don't see what your argument is about this particular thing. The stateless vessels were intended to apply to piracy. Those are stateless ships. This is the general maritime jurisdiction of the United States. And it always applied to piracy, which, as far as I'm aware, involves stateless vessels. This was an expansion of that to include cargo ships that have no flag. But where is the jurisdiction? This statute was passed. Excuse me, where is it written in the Constitution, in international law, in anything, that pirate ships are the only things that are stateless ships? It does not say that, but it says that it was generally enacted to apply to such things as piracy and terrorism and kidnapping, but not drug smuggling. Wait, terrorism? The people who wrote the Constitution were concerned about terrorism? I guess they weren't concerned about drug smuggling, but were they concerned about terrorism? No, that was said in case law that it is arguably applicable to terrorism if that is considered a piracy in that regard. But there is nothing that says that drug laws can be given universal jurisdiction. I think you are making an originalist argument that might appeal to some people on the Supreme Court, but it is not an originalist argument that has ever had much respect here. You know, argue it there. Maybe they will say you can't expand beyond it in the way they're talking now. But that's not the way we've lived for 200 years. Well, Your Honor, Bruin and Dobbs changed the way things have been for a long, long time. Well, that's all well and good, but I'm just looking at the text of the Constitution, and it says felonies on the high seas and offenses on the high seas and piracy. They're all different. It doesn't say piracy and that's it. There are other things that Congress has power to do on the high seas, right? Your Honor, that requires a treaty or that it be part of the original intention. It does not generally flow that we can enforce our drug laws against a ship on the high seas, regardless of whether it's stateless, unless there is – But that means that the entire – then we'd have to – then to accept that argument, we would have to overrule Alarcon, right, and Vanderhen too. Yeah, in that regard, yes, Your Honor. I don't think that this particular argument was made in Alarcon. Otherwise, this would not be an argument where the government had said that it was a plain error. Thank you. I know we're going to have a chance to hear from you again in the final briefing. Thank you. If I've got the order of things right, I think we're ready to hear from the government. Ms. Tarlow? Good morning, Your Honor. May it please the Court, my name is Eleanor Tarlow. I am an assistant United States attorney in the Southern District of New York. I represent the government in this appeal, and I represented the government in this case in the district court. I'd like to start with the argument that this prosecution violates the appellant's due process rights because the offense conduct did not have a sufficient nexus to the United States. That argument is squarely foreclosed by this court's precedent in United States v. Vanderhen and United States v. Alarcon-Sanchez. In Vanderhen, as this court knows, the court held that there is no U.S. nexus required for MDLEA prosecutions against persons who are trafficking drugs on board stateless vessels. And then this court extended that holding in Alarcon-Sanchez to land-based co-conspirators who are not physically on the high seas. What do we do with the fact that we saw fit to note the various connections to the U.S. in that case, and those connections don't appear here? And it was noted kind of in the general context of these due process expectations. Is there room for us to take the invitation that appellants are offering us? Your Honor, we recognize that there were certain mentions of some very limited U.S. contacts, but as Judge Gardefee noted in his opinion and the government's read of that case, that was not what drove the decision. How do we know? They said it. I think you should tell us it's right, not that we're bound, because, you know, when there's language of that sort, we're not really bound. It may be correct. Well, Your Honor, we believe you were correct because, as that court held, the harm that was trying to be addressed in that case, as in this case, against the United States, is the curtailing international drug trafficking on the high seas. Like in Alarcon-Sanchez, the defendants were working from land to coordinate a shipment of cocaine by sea that involved the transfer of cocaine from a stateless vessel to another vessel on the high seas. Again, like the appellants, the Alarcon-Sanchez defendants never intended their massive cocaine shipment to have any contact with the United States. That cocaine shipment was intended to go from Colombia to Australia, and just as the court held in Alarcon-Sanchez, there is no violation of due process rights here because the defendants here were using a stateless vessel, which one of the appellants supplied. The other appellants provided, paid for the expenses associated with the transportation of drugs on the high seas. They all helped coordinate the transfer of the cocaine on the high seas, and therefore, this prosecution does not violate their due process rights for holding them responsible. Would it be different if the people on land expected and told the people to use the flag of Liberia, Spain, or whatever, and the people on the ship chose to use a stateless ship? Your Honor, the knowledge of whether or not a stateless vessel is being used is not a requirement here. There is no mens rea element to the jurisdictional element, which is the covered vessel. When you say that, you're giving me trouble because then you're saying that people who really have no expectation whatever of being subject to the United States would be covered. That isn't this case. But isn't the line that the other side is asking for precisely whether the people have good reason to think or at least have no reason not to think the opposite, that this would be a stateless ship? Well, Your Honor, in Alarcon Sanchez, this court held that fair warning does not require that the defendants understand that they could be subject to criminal prosecution in the United States. No, we've heard that. So long as there is a stateless ship. Yes, Your Honor, so long as they could reasonably understand that their conduct was criminal and that they could be prosecuted somewhere. I'd have a little problem if we were talking about people who expected it to go on an Italian flag ship and then instead it went into a stateless ship. And those facts are not present here, Your Honor. Thank you. With respect to the arguments regarding the constitutionality of the MDLA, this argument was not raised before the district court. The plain error standard overview applies. And this court has already determined in Alarcon Sanchez that Congress did not exceed its constitutional powers when it extended the MDLA to cover the conduct of foreign land-based conspirators. What does that have to do with the argument that in doing that we really weren't presented with the sort of robust constitutional arguments that we're hearing now? It was a fairly quick assertion that this is just a fair extension of the define-and-punish laws plus the necessary power. That question was presented to the Alarcon Sanchez court, and it was addressed, that it was constitutional under the define-and-punish clause because this was a felony on the high seas and that it was necessary and proper to extend that criminal liability to land-based co-conspirators so that Congress could reach the harm that it intended to reach. So the fact that somebody has a better way of making the argument, perhaps, than was made in the previous case would just be grist for an in-bank hearing that perhaps we should overrule our decision because we didn't think through because no one presented this specific argument. However, we were confronted with an argument. It just maybe wasn't as clever as theirs. Well, Your Honor, we don't think there is merit to their argument. Oh, well, I said clever. I didn't say meritorious. Yes, Your Honor. Yeah, they've got a professor who specializes in clever arguments. That's their job. That's how they get tenure. Yes, Your Honor. And with respect to the argument about whether or not this vessel would constitute a covered vessel, it is very clearly a stateless vessel. There was no dispute in the district court. The government made a proffer during the plea allocutions of each of the appellants, which was not disputed that the vessel was, in fact, stateless and, therefore, a covered vessel under the MDLA. Unless Your Honors have any further questions, we rest on our submission. All right. Mr. Tomeo? My name is Peter Tomeo. I represent the defendant, Zapata. I want to start with the issue we just left that Judge Calabresi brought up about this concern about what the people on shore may or may not be aware of. The way the government would have the court create a rule here would open up jurisdiction to anybody, no matter what their knowledge was. So you could have people, as we argue in this case, who were on land, who intended to have no contact with the United States, who intended to have no effect upon the United States, nevertheless be prosecuted because the United States decided to assert the jurisdiction and to pull over or to board the ship on high seas that was flagless. We think, Your Honors, that that is a significant difference because now what we have is a situation where Congress decides for the world what is contraband, what is a controlled substance. This isn't a case where they say this law applies to cocaine. Only with respect to stateless vessels on the high seas. Yes. Not with respect to stateless vessels in Colombian waters, not with respect to vessels on the high seas flying a flag of some other country, which may take a different view with respect to any given controlled substance, but only with respect to people who are choosing to operate in international waters without claiming adherence to the jurisdiction of any country in the world. Only those people. And we say, Your Honor, that's why there's a significant difference between those people physically on the ship and those who stay on land. I don't understand that because once you say that the United States has jurisdiction over what happens on the stateless ship, I don't see how that distinguishes the case with respect to the people back home from if the people on the ship were flying an American flag and were unquestionably subject to American jurisdiction. The people back home conspired with them. Whether they had a specific intention to be subjected to American jurisdiction wouldn't matter, would it? Well, we say it does, Your Honor. If it was an American flag vessel, do you agree you wouldn't have an argument or do you think you'd have an argument even then? I think you would have an argument there, too, Your Honor. I think the people who are on land are keeping themselves away from the U.S. jurisdiction. Don't we come back to the possible distinction about whether the people on land had any knowledge or counter knowledge that this would be on a ship that would be subject to American jurisdiction? That is, it might be possible, but it is not this case where people on land had said, Do not put this on a stateless ship. Do not put this on an American flagship. We don't want to do that. They might conceivably be outside, but that isn't this case or any of these other cases. But that's the rule the government wants you to adopt. For what? The government wants you to adopt that if the individual, because they said it just a moment ago. They said that knowledge is not an element of this offense. Yes, so we'll put another footnote in. The same way we reserved this issue in the last case, we'll reserve that issue for the next case. For the next case. I mean, we're perfectly capable of doing that. What the government wants is what it wants. What we decide is what we decide. Well, what happens here, Your Honor, is we go step by step, and that's where we come down to this point. The whole issue of the jurisdiction over the individuals on a stateless ship was built on that idea that not that the United States has some interest in that stateless ship, but that these individuals put themselves outside of the reach of any state by being on a ship that has no connection to any state. So that no state could prosecute them. We submit, you know, if Jamaica wanted to prosecute these individuals, if Guyana wanted to prosecute these individuals, if Columbia wanted to prosecute them, they possibly could because the people had nexus to that. They were there. They had some connection. There's a difference we submit between those individuals who put themselves onto that stateless ship and opened themselves up. But those people also could be prosecuted by Jamaica or Guyana or wherever they came from when they got on the stateless ship, right? Because they came from there, and they had a nexus to it. But that's the whole point. How do you distinguish the people on the ship from the people off the ship? You just told me that that's because the people off the ship could be prosecuted by their home country and had nothing to do with the United States. The same thing is true for the people on the stateless ship. They're not beyond anyone's reach. The country that they were in when they embarked with the drugs has jurisdiction over them for sure. So that fact does not distinguish the people on the ship from the people off the ship. But what does distinguish it, Your Honor, is the nexus between what they are doing and the United States. And we're arguing here there is no nexus between the people on land and the United States. Once they were the individuals on a stateless ship, the stateless ship is as if it was part of the United States, and they do have jurisdiction. But it shouldn't reach that. Maybe we're just going around in circles. I know. But the question is, in other words, if the stateless ship is equivalent to a ship flying the American flag, don't you have to lose? Because surely if the people on land saw them take off in the ship flying the American flag, good luck with your American flag going to Ireland, they would be under the jurisdiction of the United States. Well, Your Honor, I disagree with that because I think what we're talking about here, but I do want to just, if I could have one moment, Your Honor, to address one other issue you had, which brought up in the questions to my colleague, which is what happens if they took that ship and decided to bring it to Miami instead of going to Ireland. At that point, Your Honor, it wouldn't be the same conspiracy. I would argue that that would be a separate conspiracy and that those individuals wouldn't prosecute. All right. I think we hear you. This is going to be a true minute for your final rebuttal on Article I. Thank you, Your Honor. So just a couple of quick points. Very, very quickly, Your Honor, I do want to point out that the statute specifically addresses conduct on the high seas. It does not expand itself to land-based conspirators by its own terms. I wanted to point out that, as the court noted, some people don't know whether it's stateless, whether it's not. The ones who knew that it was stateless were the DE agents who set it up. And that's a problem in a lot of ways. These guys, you know, obviously, you know, we're not trying the case now. This was a plea. But I also wanted to point out, Your Honors, that in enacting the predecessor statute to this one, it was specifically noted that this was for because of the difficulty prosecutors have of proving that drugs were destined for the United States. In this case, there's no question that they were not destined for the United States. So the purpose of this statute is to address drugs coming in by ocean and interdicting them before they get to the United States and for prosecutors to be able to, you know, not have to prove that they're destined for the U.S. Here, there's no question. Everybody knows they were not destined for the United States. Thank you. Thank you. I appreciate all of your arguments. Thank you. And we'll take this case under advisement. Thank all of you.